ORANGE COUNTY.—HON. R. C. COLEMAN, SURRO-
GATE.—June, July, 1887.

MATTER OF TOWNSEND.

*In the matter of the estate of* PETER TOWNSEND,
*deceased.*

Testator died in September, 1885, aged 84 years, leaving a large estate, and
leaving, him surviving, three daughters, to one of whom, C., he gave,
by his will, executed in 1883, besides certain absolute bequests, a life
interest in more than two thirds of his property, with remainder to her
children. Upon the judicial settlement of the account of the execu-
tors, it appeared that C. claimed certain personal property, consisting
of a deposit in a trust company and railroad bonds, of the value of
about $120,000, as a gift from testator in his lifetime, which the other
legatees contended belonged to the estate.

The bonds were purchased by the testator, and, after being registered in
C.'s name, were retained by him, and found, after his death, among
his papers, he having regularly removed the coupons and collected the
interest. The money, amounting to over $100,000, was, except the
last item of $4,000, deposited in the trust company, at different dates,
before the execution of his will, in C.'s name, by the testator, who
gave to the company a slip containing the former's signature, to be
pasted in the signature-book. C. kept the pass-book in her possession,
but never drew against the deposit. There was evidence of declara-
tions by testator that he wanted to create a fund for C.'s benefit. It
was contended that the alleged gifts were void for want of delivery,
and that, if sustained, they must be regarded as adeeming, *pro tanto*,
the provisions in C.'s favor, contained in the will.—

*Held*, that the gifts were valid, the control of, and title to the subject-matter
having passed from testator to the donee; and that there was no ademp-
tion of the testamentary disposition.

Jackson v. Twenty-third St. R. R. Co., 88 *N. Y.*, 520; Young v. Young,
80 *id.*, 422—distinguished.

Testator, by his will, gave the residue of his real and personal property to
his executors, in trust to sell the former, and divide the proceeds of
the entire residue into thirty-two equal parts; whereof he directed the
executors to invest, in their names as trustees, five for the benefit of
his daughter, M., eight for that of his daughter, B., and nineteen for
that of his daughter, C., during their respective natural lives, and,
at the death of each of his said daughters, to pay the principal in-

vested for her benefit to her descendants. He appointed C. and two others "executors of this my will, and trustees of the several trusts hereinbefore created," and provided in case " any of said trustees" should die or become disqualified, for the appointment of a successor.—
*Held*, that the executors were not entitled to double commissions.
Laytin v. Davidson, 95 *N. Y.*, 263—distinguished.

CONTEST concerning alleged gifts *inter vivos*, upon judicial settlement of executors' account; and determination of question whether executors were entitled to additional commissions as trustees. The facts are stated in the head note.

PLATT & BOWERS, *for executors :*

Cited, in favor of donee's claim, Bedell v. Carll (33 *N. Y.*, 581); Martin v. Funk (75 *id.*, 134); Noble v. Smith (2 *Johns.*, 52); Fulton v. Fulton (48 *Barb.*, 581); Schouler's Pers. Prop., vol. 2, § 67 ; Francis v. B'klyn El. R. R. Co. (17 *Abb. N. C.*, 1); Grymes v. Hone (49 *N. Y.*, 17); De Caumart v. Bogert (36 *Hun*, 382); Robert's Appeal (85 *Penn. St.*, 84); Scott v. Simes (10 *Bosw.*, 314); Cooper v. Burr (45 *Barb.*, 9); Standing v. Bowring (*L. R.*, 27 *Ch. D.*, 341); Bennet v. Bennet (*L. R.*, 10 *Ch. D.*, 474); Dummer v. Pitcher (5 *Sim.*, 35 ; affi'd, 2 *M. & K.*, 262).

G. L. RIVES, *for objecting legatees :*

Cited Noble v. Smith (2 *Johns.*, 52); Grangiac v. Arden (10 *id.*, 293) ; Bedell v. Carll (33 *N. Y.*, 581); Westerlo v. De Witt (36 *id.*, 340); Young v. Young (80 *id.*, 422) ; Jackson v. Twenty-third St. R. R. Co. (88 *id.*, 520) ; Stokes v. Pease (19 *Week. Dig.*, 310); Bunn v. Markham (2 *Taunt.*, 224); Trimmer v. Danby (25 *L. J., N. S.* [*Eq.*], 424); Farquharson v. Cave (2 *Collyer*, 356). As to ademption, Hine v.

Hine (39 *Barb.*, 507) ; *Exp.* Oakley (1 *Bradf.*, 281);
Langdon v. Astor (16 *N. Y.*, 9); Benjamin v. Dim-
mick (4 *Redf.*, 7); Beebe v. Estabrook (79 *N. Y.*,
246); Alexander v. Alexander (1 *N. Y. State R.*,
508); Paine v. Parsons (14 *Pick.*, 318); Kirk v.
Eddowes (3 *Hare*, 509); Dugan v. Hollins (14 *M'd.
Ch.*, 139) ; Hopwood v. Hopwood (7 *H. L. Cas.*, 728);
Miner v. Atherton (35 *Penn. St.*, 528); Leighton v.
Leighton (*L. R.*, 18 *Eq.*, 458); Van Houten v. Post
(33 *N. J., Eq.*, 344); Lawrence v. Lindsay (68 *N. Y.*,
108).

THE SURROGATE.—To have constituted the transac-
tions good gifts, two things were essential—an inten-
tion to give, and a sufficient delivery. The intention
to give I think is clearly established. Was there a
sufficient delivery? "The delivery must be such as
to vest the donee with the control and dominion of
the property, and to absolutely divest the donor of
his dominion and control, and the delivery must be
made with the intent to vest the title of the property
in the donee" (Jackson v. Twenty-third Street R. Co.,
88 *N. Y.*, 520).

By the registration of the bonds in Mrs. Crawford's
name, Mr. Townsend placed them under her control
and dominion, and divested himself of that control
and of the title. It is true that he could and did re-
tain the actual custody of the bonds, and also collect-
ed the interest accruing on them during his lifetime ;
but these acts are not conclusive evidence of owner-
ship, nor do they disprove a gift. By his own act,
Mr. Townsend caused that to be done (the registration

of the bonds in Mrs. Crawford's name) which placed them beyond his control, except as to the mere custody of them, and thereby made it necessary, in case of a transfer of title, to apply to her for authority for that purpose. The moneys deposited with the trust company by Mr. Townsend were thereby made subject exclusively to Mrs. Crawford's control, and he so understood it, for he procured from her and delivered her signature to the bank, for its guidance for that purpose.

The distinction between this case and the cases of Jackson v. Twenty-third Street R. Co. (*supra*) and Young v. Young (80 *N. Y.*, 422), I think is that, in the case of Jackson, the intention to give was not shown, and, in the case of Young, there was an intention to make the gift shown, but nothing which could be construed to be a delivery. In the latter case, there was no parting with the dominion, nothing was done which precluded the donor from selling the bonds or exercising any other act of ownership over them. I am of opinion that the gifts in each instance were valid.

It remains to be determined whether these gifts are to be adjudged ademptions, in whole, or in part, of the provision in the will for Mrs. Crawford. The greater portion of the $102,020, deposited to the credit of Mrs. Crawford with the Trust Company,—in fact all but the sum of $4,020, which was the amount of the last deposit,—were deposited by Mr. Townsend before he made his will. We are, therefore, to suppose that, at the time he made his will, he considered this fact in determining what portion he should give

Mrs. Crawford by the will, and any amount advanced by him to her before that is not to be considered an ademption of what was given her by the will (Arnold v. Haroun, Gen. T. Sup. Ct., 5th Dept., 26 *N. Y. Week. Dig.*, 22).

Generally, advancements made by a parent to a child after the making of a will are presumed to be intended to extinguish a legacy to the extent of such advance, but this presumption may be overcome by evidence of declarations of the testator at the time of making such advancements, which show the intent with which the act was done, and if done with one intent, it will operate as an ademption, and, if with a different intent, otherwise.

I think the fair inference to be drawn from Mr. Townsend's remarks to Mr. Clark and Dr. Boyd is that the bonds and moneys were intended to be out and out gifts, and were not to be deducted from the portion given her by the will. I think this view is, in a measure, sustained by the nature of the legacy to Mrs. Crawford,—it is to her for life only,—and it can hardly be supposed that the testator intended, by making absolute gifts to Mrs. Crawford, to thereby diminish the fund to be received by her children.

The decree will settle the account of the executors as filed.

The following opinion was filed, in the same matter, in July, 1887:

THE SURROGATE.—It is necessary to decide now whether the executors will be entitled to double com-

missions in the administration of this estate, in order to determine whether they are now entitled to be allowed full commissions; for, if this is a case in which they will not be entitled to double commissions, they should, on this accounting, be allowed full commissions on sums received and paid out, and half commissions for receiving the balance still retained and not directed to be paid out herein.

The rule by which to determine this question is laid down by Judge FINCH, in Johnson v. Lawrence (95 *N. Y.*, 154) at page 160, where he says: "Where, by the terms or true construction of the will, the two functions with their corresponding duties co-exist, and run from the death of the testator to the final discharge, interwoven, inseparable and blended together, so that no point of time is fixed or contemplated in the testamentary intention, at which one function should end and the other begin, double commissions or compensation in both capacities cannot be properly allowed."

It is claimed, on behalf of the executors, that the testator contemplated such a point of time where, by his will, he directs his executors to hold the residue of his estate in trust for the benefit of his children and grandchildren. I am unable to discover the point of time at which one function is to cease and the other begin. The true construction of this provision of the will, it seems to me, is the one followed by the executors, *i. e.*, that his children are entitled to the income upon his estate (excepting the two parcels of real estate given to Mrs. Crawford and her children) from his death, not from and after a year from his

death, or after settlement and judicial determination of the amount of the residue; in other words, that their duties in regard to these trust funds began at once, and will continue until the final distribution under the provisions of the will. It is true that a portion of the fund is and will be required to pay debts and expenses; still the duties under the trusts, as to the residue, began at once, and are inseparable in point of time, from their other executorial duties, and will continue blended until the final determination.

To reconcile the rule laid down in Johnson v. Lawrence (*supra*), with the facts in Laytin v. Davidson (95 *N. Y.*, 263), in which latter case the court allowed the executors double commissions, and upon which case the counsel for the executors herein rely, is not without its difficulties; but the difference between that case and this case seems to me to lie in the fact mentioned by Judge FINCH, at page 266. In that case, " the duty of division into shares and to receive and apply the income of the several shares to the use of the beneficiaries, respectively, could not be performed until the residue should be ascertained by an accounting." Be this as it may, however, the decision is stated to be based on the conclusion that " the will contemplated an eventual separation of the functions and duties," which, as I have pointed out, is not the fact in this case.

I, therefore, conclude that this is a case in which only one set of commissions can be allowed.